George **HAJJAR**, Plaintiff,

v.

Judith C. **DAYNER**, Defendant.

No. 3:97 CV 466 GLG.

United States District Court, D. Connecticut.

May 3, 2000.

John R. Williams, Williams & Pattis, New Haven, CT, for George J. Hajjar.

Kathryn A. Mobley, Attorney General's Office, Transp., Contract Lit. & Condemnation, Hartford, CT, Susan T. Pearlman, Attorney General's Office, Child Protection, Hartford, CT, for Judith C. Dayner.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Defendant moves for summary judgment in this employment discrimination case. This action is not brought pursuant to Title VII of the Civil Rights Act of 1964 but rather as a civil rights claim pursuant to 42 U.S.C. § 1983, since both Plaintiff and Defendant, who was Plaintiff's supervisor, were employees of the Connecticut Department of Children and Families at the time the alleged discrimination occurred. (In order to avoid the constitutional restrictions concerning actions against the state in federal court, Plaintiff sues Defendant individually).

The facts in this case are largely undisputed. Since this is a motion for summary judgment by Defendant, we will recite the pertinent facts in the manner most favorable to Plaintiff.

Plaintiff was a male social worker employed by the Connecticut Department of Children and Families for almost ten years prior to the commencement of this action. He had been promoted to the position of social worker supervisor. When he was expecting the birth of a child, he expressed a desire to change his shift so that he might better meet his family's child care needs. Certain supervisors (not including Defendant) indicated that he could have such a transfer when a position became available. Pending such a development, he was offered and received six months unpaid family leave. During his period of family leave, he continued seeking a transfer, indicating a willingness to take a demotion if that was necessary in order to be assigned to the second shift. Ultimately a second shift position became available and it was given to a female who applied later than Plaintiff. While he now claims that the female who got the position was less qualified than he was, he acknowledged during his deposition that she was at least as well qualified. Defendant notes that the female who got the transfer was actually more qualified than Plaintiff, having had more extensive experience than Plaintiff and being senior to him. With respect to the purported "promise that he could have the next vacancy," Defendant notes that, on deposition, Plaintiff admitted there was no firm promise made by any-

one. In addition, Defendant notes that none of the Department employees had the power to make such a promise since filling the position was governed by both the union contract, which required preference to be given to the employee with the greater seniority, and compliance with a federal consent decree. *See Juan F. v. Weicker,* 37 F.3d 874 (2d Cir.1994). That decree required improvement in the services offered by the Department, including a centralized intake system, and, under the implementation plan, the requirement of certain qualifications for the position sought by Plaintiff. One of these requirements (to the extent possible) was that preference should be given to supervisors who had three years experience as intake-investigations workers and one year experience supervising such a unit. The successful candidate had four years experience in intake and had worked in the unit and successfully completed a working test period as a supervisor, which Plaintiff had not done. She clearly had more supervisory experience than Plaintiff.

■ Plaintiff claims that the failure to give him the transfer denied his constitutional rights to due process and equal protection. To prevail on the procedural due process claim, Plaintiff must establish that state action deprived him of a protected property or liberty interest. *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1061–62 (2d Cir.1993). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). While most of the cases involving transfers concern school teachers, all of them agree that there is no property interest *per se* in a transfer or, by analogy, a refusal to transfer. *See, e.g., Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 539 (10th Cir.1995) ("[T]he overwhelming weight of authority holds that no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory or contract provision to the contrary.") (collecting cases); *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1486 (11th Cir. 1992) (transfer with no loss of pay or rank did not deprive plaintiff of a protected property interest), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993); *Huang v. Board of Governors of Univ. of North Carolina,* 902 F.2d 1134, 1141–42 (4th Cir.1990) (tenured college professor had no property interest in particular departmental assignment under North Carolina law); *Kelleher v. Flawn,* 761 F.2d 1079, 1087 (5th Cir.1985) (no property interest in a particular teaching assignment under Texas law); *Parrett v. City of Connersville,* 737 F.2d 690, 693 (7th Cir.1984) (expressing doubt as to whether a lateral transfer, involving no loss of pay, could ever be a sufficient deprivation to violate the Fourteenth Amendment and noting that a contrary conclusion could subject all personnel actions by state and local governmental agencies to claims under section 1983), *cert. dismissed,* 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985); *Childers v. Independent Sch. Dist. No. 1,* 676 F.2d 1338, 1341 (10th Cir.1982) (holding that, although tenured teachers had a property right to continued employment, they did not have a property interest in a particular assignment because their contract did not provide that teachers must be given the same assignment or wages upon renewal); *DeLeon v. Little,* 981 F.Supp. 728, 735 (D.Conn.1997) (transfer to different position with same pay and benefits did not constitute deprivation of property interest under the Fourteenth Amendment); *Wargat v. Long,* 590 F.Supp. 1213, 1215 (D.Conn.1984) (holding that personnel decisions short of termination do not constitute a deprivation of a property interest under the due process clause of the fourteenth amendment). In *Sekor v. Board of Educ. of Ridgefield,* 240 Conn. 119, 128, 689 A.2d 1112 (1997), the Connecticut Supreme Court held that a tenured teacher

had a right only to a generic position as a teacher, rather than a right to a specific position, and that the school board had plenary administrative authority over her assignments.

■ Property interests are created not by the Constitution itself, but are created and defined by independent sources such as state statutes, regulations, municipal ordinances, and contracts. *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. 2701. There are no statutes, regulations or cases supporting Plaintiff's claim. On the contrary, the consent decree mentioned above and the union contract both require the action taken by Defendant. Therefore, Plaintiff's due process claim must fail.

■ Plaintiff's equal protection claim is equally unavailing. Individuals may bring an action pursuant to 42 U.S.C. § 1983 to vindicate their constitutional right under the equal protection clause to be free from sex discrimination in public employment. *see Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979); *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 143–44 (2d Cir.1993). A section 1983 plaintiff claiming employment discrimination need not concurrently plead a violation of Title VII. *Annis v. County of Westchester*, 36 F.3d 251, 254 (2d Cir.1994), *on remand* 939 F.Supp. 1115 (S.D.N.Y.1996), *aff'd in part and vacated in part* 136 F.3d 239 (2d Cir.1998). "A section 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir.1998).

■ In analyzing a discrimination claim under section 1983, courts borrow the burden-shifting framework of Title VII claims set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *Annis v. County of Westchester*, 136 F.3d at 245.

In order to establish a prima facie, a plaintiff must show: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) that the position was ultimately filled by a person who is not a member of the relevant protected class. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir.1997) (en banc), *cert. denied*, 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). Although a plaintiff's burden of establishing a prima facie case is minimal, we find that Plaintiff has failed to sustain his burden because he has failed to allege an adverse employment action.

■ For a discrimination claim to be actionable, Plaintiff must sustain a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) (internal quotation marks omitted). A transfer or denial of a transfer, absent some materially adverse consequences affecting the terms, conditions, or privileges of employment, does not amount to an adverse change in working conditions. *Brown v. Brody*, 199 F.3d 446, 457 (D.C.Cir.1999) (holding Title VII plaintiff's non-selection for desired lateral transfer did not constitute an adverse personnel action); *Cooper v. New York State Dep't of Human Rights*, 986 F.Supp. 825, 828 (S.D.N.Y.1997). There must be a material loss of benefits. *Galabya*, 202 F.3d at 641–42. The fact that someone may have "promised" a transfer in the future does not transform Plaintiff's interest into a protected property interest. *See Hawkins v. Steingut*, 829 F.2d 317, 322 (2d Cir. 1987). Nor does the fact that he was the earlier applicant for the position give him any preference absent a civil service regulation or union contract regarding such.

At bottom, Plaintiff's claim is reduced to the fact that the transfer he wanted went to someone of a different gender. As the Second Circuit has pointed out, any time one candidate is chosen over another, there are going to be differences between

the candidates as to race, religion, sex, and national origin. *Fisher v. Vassar College,* 114 F.3d at 1337. Consequently, such differences do not support even a *prima facie* claim. Were it otherwise, every selection process could result in a successful discrimination claim. A plaintiff is required to prove that discrimination against his or her race, gender, religion, etc. was the real reason for not obtaining the benefits sought, and "a jury cannot infer discrimination from thin air." *Norton v. Sam's Club,* 145 F.3d 114, 119 (2d Cir.), *cert. denied,* 525 U.S. 1001, 119 S.Ct. 511, 142 L.Ed.2d 424 (1998). While summary judgment may be a disfavored procedure in this Circuit, particularly in employment discrimination cases, a properly supported motion for summary judgment can be granted. *Woroski v. Nashua Corp.,* 31 F.3d 105, 109–10 (2d Cir.1994).[1]

Under the circumstances, we **GRANT** Defendant's motion for summary judgment (**Doc. No. 18**) and dismiss the action. The Clerk shall enter judgment for Defendant with costs.

SO ORDERED.

---

[1] Having decided the motion on the foregoing grounds, we have no need to consider Defendant's additional argument that, in any event, she was entitled to qualified immunity.