**Dean S. MERCER, Jr., Plaintiff,**

v.

**Edmond BRUNT, Connecticut State Police Lieutenant; and David Coyle, Connecticut State Police Sergeant; in their individual and official capacities, Defendants**

**No. 3:01CV1121(WWE).**

United States District Court,
D. Connecticut.

March 28, 2002.

James S. Brewer, West Hartford, CT, for Plaintiff.

William M. Brown, Jr., U.S. Attorney's Office, New Haven, CT, Antoria D. Howard, Attorney General's Office, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

EGINTON, Senior District Judge.

This action arises pursuant to 42 U.S.C. § 1983 for alleged violation of the Fourteenth Amendment to the United States Constitution; the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.; Connecticut General Statutes ("C.G.S.") § 46a–60 et seq.; and a state law claim of intentional infliction of emotional distress.

The plaintiff alleges that the defendants promoted a hostile work environment in violation of 42 U.S.C. § 1983 and the due process and equal protection laws of the Fourteenth Amendment to the United States Constitution (Count One); violated the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. § 12101 et seq., by being aware of the plaintiff's disability, yet harassing and threatening plaintiff in ways they knew would serve to exacerbate his disability (Count Two); violated the Connecticut Fair Employment Practices Act, codified at C.G.S. § 46a–58(a)(1) and § 46a–60(a)(1) by being aware of the plaintiff's disability, yet harassing and threatening plaintiff in ways they knew would serve to exacerbate his disability, and by failing to accommodate such disability (Count Three); and intentionally inflicted emotional distress on the plaintiff by the defendants' extreme and outrageous acts and/or omissions (Count Four).

Pending before the Court is the defendants' motion to dismiss all counts of the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. For the reasons set forth below, the defendants' motion to dismiss will be granted in part and denied in part.

### Subject matter jurisdiction.

 The initial consideration for the Court is subject matter jurisdiction. It is well-settled law that the state is immune under the Eleventh Amendment from suit under 42 U.S.C. § 1983. "A claim against a state officer in his official capacity is essentially a claim against the State that implicates the Eleventh Amendment because the State is the real, substantial party in interest." Claims are barred against state officers in their official capacity except to the extent that the plaintiff seeks prospective injunctive relief. However, as long as payment is not required from state coffers, a plaintiff can state a claim for money damages against the state officer in his individual capacity. *Russo v. City of Hartford,* 184 F.Supp.2d 169, 181 (D.Conn.2002). Therefore, this Court has subject matter jurisdiction over the claims against the state officers in their official capacities for prospective injunctive relief, and against the state officers in their individual capacities for money damages under 42 U.S.C. § 1983.

### BACKGROUND

The plaintiff, Dean S. Mercer, Jr., states that at all times material to this complaint, he was a detective with the Connecticut State Police ("CSP"), and was assigned to the CSP Casino Unit; defendant Edmond Brunt was a lieutenant with the CSP and the commanding officer of the Casino Unit, and defendant David Coyle was a sergeant with the CSP and was plaintiff's direct supervisor. The plaintiff was hired as a CSP trooper in June, 1987, and was subsequently promoted to the rank of detective. He was assigned to the night shift at the Casino Unit Foxwoods Office for six years, and at the time of the incidents alleged in his complaint was assigned to the day shift at the Mohegan Sun.

In the spring of 2000, plaintiff was telephoned by defendant Coyle and was told

that he was being transferred to the evening shift at Foxwoods. On August 19, 2000, plaintiff was told by a third party that defendant Coyle had mentioned demoting the plaintiff to the traffic squad. On September 23, 2000, defendant Coyle stated to plaintiff, "You're lucky you're not out writing tickets." On December 20, 2000, defendant Coyle told plaintiff that he planned on involuntarily transferring him to the midnight shift at Foxwoods. On February 12, 2001, the plaintiff was told by a third party that defendant Coyle was transferring him to Foxwoods. On February 13, 2001, defendant Coyle allegedly implied to a third party that he did not like the plaintiff. On another occasion, defendant Coyle allegedly said to a third party, "Watch me get Mercer's blood pressure up."

On March 12, 2001, plaintiff met with defendant Brunt to complain about the harassment he felt he was being subjected to. Brunt allegedly agreed that defendant Coyle was harassing the plaintiff, and that he [Brunt] would keep the meeting confidential to avoid further problems. On March 17, 2001, a third party told the plaintiff that he'd heard about the meeting between the plaintiff and Brunt, and that the plaintiff had "stabbed Coyle in the back." On March 27, 2001, the plaintiff was advised that he was being transferred from the day shift at Mohegan Sun to the night shift at Foxwoods. The transfer took place effective April 20, 2001. The plaintiff was senior to two other CSP troopers who retained their assignments on the day shift at Mohegan Sun.

## DISCUSSION

### Motion to Dismiss.

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). When deciding a motion to dismiss, the Court must accept as true the well pleaded allegations of the complaint. *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In addition, the allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### Substantive due process violation.

The plaintiff alleges a violation of his substantive due process rights under the Fourteenth Amendment by the defendants, due to their willful and deliberate disregard of his guaranteed rights by their pattern of harassment and threats.[1]

---

1. 42 U.S.C. § 1983, in pertinent part, states that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

The Fourteenth Amendment to the Constitution guarantees, in pertinent part to this action, that no state shall "deprive any person of life, liberty, or property, without the due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

■ "Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995). The Second Circuit has pointed out that malicious and sadistic abuses of government power which are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience. *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 252 (2d Cir.2001).

■ The Supreme Court has enunciated two alternative tests by which substantive due process is examined. Under the first test, the plaintiff must prove that the governmental body's conduct "shocks the conscience." Under the second test, the plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause. *DeLeon v. Little,* 981 F.Supp. 728, 734 (D.Conn. 1997). The plaintiff fails to satisfy his burden of proving a substantive due process violation under either test.

■ Under the first test, the alleged conduct is not sufficiently egregious to shock the conscience. The substantive due process doctrine is to be applied with "caution and restraint." *Moore v. City of East Cleveland,* 431 U.S. 494, 502, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Moreover, the Second Circuit has noted with regard to the "shocks the conscience" test that the acts must do more than offend some fastidious squeamishness or private sentimentalism. They must be such as to offend even hardened sensibilities, or constitute force that is brutal and offensive to human dignity. *Johnson v. Glick,* 481 F.2d 1028, 1033 n. 6 (2d Cir.)

The plaintiff was told that defendant Coyle planned to involuntarily transfer him back to the midnight shift at Fox-

woods, but he was never threatened with the loss of his job. Coyle's other comments might rise to the level of incorrect or ill-advised, but not to the level of "shocks the conscience." The Court finds that the defendants' actions do not rise to the level needed to find a violation of the plaintiff's Fourteenth Amendment right of substantive due process.

■ Under the second test, the plaintiff has failed to demonstrate a violation of an identified liberty or property interest protected by the due process clause. The plaintiff's attempt to use the "deliberate indifference" standard set out in *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) and *Hanrahan v. City of Norwich,* 959 F.Supp. 118, 122 (D.Conn.1997) is not persuasive. The cases cited can be distinguished from the present action in that they clearly identified a protected interest. In *Farmer,* the test was used to determine whether prison authorities acted with "deliberate indifference" toward prisoners, in violation of their Eighth Amendment rights. There was a liberty interest at stake in that case. In *Hanrahan,* the test was applied to determine if a police officer violated due process by engaging in conduct that made it more likely the deceased would commit suicide. The interest deprivation in that case was obviously a life interest.

■ The *DeLeon* court held that an employee who was transferred to a position with the same rate of pay and benefits was not deprived of a constitutionally protected property interest. "While she may have had a constitutionally guaranteed property right in continued employment," she was not deprived of this right because she was not discharged. 981 F.Supp. at 735. In *Gordon v. Nicoletti,* 84 F.Supp.2d 304, 309 (D.Conn.2000), the court held that although a tenured teacher had a protected property interest in continued employ-

ment, the teacher had no property interest in being allowed to remain at the same school, teach the same subjects, and work with the same colleagues. In ruling on a case where the plaintiff wanted to be transferred, but the transfer was given to another person, the court in *Hajjar v. Dayner* held that the plaintiff had no property interest in the coveted transfer. "Property interests are created not by the Constitution itself, but are created and defined by independent sources such as state statutes, regulations, municipal ordinances, or contracts." 96 F.Supp.2d 142 (D.Conn.2000).

In the case at bar, the plaintiff has not alleged a protected property interest under the Fourteenth Amendment, but the Court cannot say that one does not exist, either under statute, regulation or contract. Accepting as true the allegations in the complaint, drawing all reasonable inferences in favor of the plaintiff, the Court concludes that the plaintiff has the right to attempt to prove a property interest, and that the defendants violated his rights under the due process clause of the Fourteenth Amendment. The motion to dismiss will be denied on this issue.

**Equal protection violation.**

 The plaintiff alleges an equal protection violation based upon selective enforcement. In order to establish an equal protection violation under the Fourteenth Amendment based upon selective enforcement, plaintiff must prove that (1) in comparison with others similarly situated, he was selectively treated, and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir.1999).

 The plaintiff bases his allegation of selective treatment solely on the ground

that he was senior to two other CSP Troopers at Mohegan Sun who had retained their assignments on the day shift at Mohegan Sun. He does not allege that his co-workers or others under the supervision of the defendants were not subjected to the same comments and day-to day actions by the defendants that he perceived to be a hostile work environment. This, without more, is insufficient to find a violation of the Fourteenth Amendment based on selective enforcement. However, the Court will allow the plaintiff the opportunity to provide evidence of selective enforcement.

For the reasons stated above, the Court will deny the defendants' motion to dismiss Count One.

**Violation of ADA as to all defendants.**

 The defendants point out that it is well-settled law that the ADA does not recognize a cause of action against supervisory employees under the ADA, either individually or in their official capacity, citing *Menes v. CUNY Univ. of New York*, 92 F.Supp.2d 294, 306 (S.D.N.Y.2000). This Court concurs. Recent decisions of this Court follow the ruling in *Menes*. *See Wright–Kahn v. People's Bank, Bridgeport*, 2001 WL 902653 * 1 (D.Conn. July 25, 2001).

 The Court also notes the ambiguity in the plaintiff's claim regarding his disability. Although only a "short and plain statement of the claim showing the pleader is entitled to relief is needed" under Rule 8 of the Federal Rules of Civil Procedure, the plaintiff's complaint is not clear about the nature of his alleged disability. In the body of the First Count of his complaint, the plaintiff mentions that the defendants were aware of his hypertension, then claims that the defendants' actions caused him to suffer severe physical consequences, "to wit: hypertension, anxiety and depression diagnosed by his treating physician." The Second Count of

the complaint lists his disability as hypertension, anxiety, and depression. The Court is confused as to how the defendants' actions could cause a problem that allegedly already exists, and construes the complaint as stating that the plaintiff initially suffered from hypertension.

The Supreme Court held that an employee's hypertension is not regarded as disabling under the ADA, as it does not substantially limit the major life activity of working. *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 525, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). The plaintiff in the present case makes no mention that his major life activity of working was affected by his hypertension, nor does he allege that he requested accommodation and it was not provided.

For the reasons set forth above, the defendants' motion to dismiss Count Two will be denied, and the Court will instruct the plaintiff to amend his complaint to erase the ambiguity surrounding his disability.

### Individual liability of defendants under CFEPA.

■■■ The defendants move to dismiss Count Three against the two individual defendants, because they are not employers within the meaning of the CFEPA. Section 46a–51(10) defines "employer" as including the state and all political subdivisions thereof and means any person or employer with three or more persons in his employ.

Connecticut courts have been split over individual liability under CFEPA § 46a–60(a) for many years but the issue has finally been resolved in the State of Connecticut. This question of law was certified by Judge Nevas to the Connecticut Supreme Court in *Perodeau v. City of Hartford*, 3:99cv00807(AHN), and accepted by that court on January 25, 2001. On March 26, 2002, the Connecticut Supreme Court ruled that § 46a–60a does not impose liability on individual employees. *Perodeau v. City of Hartford*, 259 Conn. 729, 743, 792 A.2d 752, 761 (2002).

Therefore, the Court will grant the defendants' motion to dismiss Count Three.

### Intentional Infliction of Emotional Distress.

■■■ Under Connecticut law, to establish a claim of intentional infliction of emotional distress, a plaintiff must plead and prove that (a) defendants intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of their conduct; (b) defendants' conduct was extreme and outrageous; (c) defendants' conduct caused the plaintiff's distress; and (d) the emotional distress suffered by the plaintiff was severe. *Russo*, 158 F.Supp.2d at 226. The standard in Connecticut for conduct reaching the level of "extreme and outrageous" is defined as "that which exceeds all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Id.*

■■■ The question of whether the defendants' conduct is sufficient to satisfy the element of extreme and outrageous conduct is one for the court. Only where reasonable minds differ does it become a question for the jury. *Whitaker v. Haynes Construction Company, Inc.*, 167 F.Supp.2d 251, 254 (D.Conn.2001).

The *Perodeau* court noted that "it is clear that individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress, as a result of conduct in the workplace. There are few things more central to a person's life than a job, and the mere fact of being demoted or denied advancement may be extremely distressing." The court stated that individuals in the workplace should also reasonably expect to be subject to workplace gossip, rivalry, personality conflicts and the like.

259 Conn. 729, 755–58, 792 A.2d 752, 768–69.

This Court finds that comments made by defendant Coyle, comments relayed to the plaintiff by third parties, reassignment to a job the plaintiff had previously held for six years, and allegations that the plaintiff has suffered a loss of reputation among his co-workers do not rise to the level of extreme and outrageous behavior under Connecticut law. For this reason, the second element in the test for intentional infliction of emotional distress is not satisfied, and the defendants' motion to dismiss Count Four will be granted.

### Conclusion

For the reasons stated above, the defendants' motion to dismiss (Doc.# 8) is GRANTED in part, DENIED in part. The motion to dismiss Count One is DENIED. The motion to dismiss Count Two is DENIED. The plaintiff is instructed to amend his complaint within twenty-one days, clearing up the ambiguity surrounding his disability. The motion to dismiss Count Three and Count Four is GRANTED.