Audrin DESARDOUIN, Plaintiff

v.

UNITED PARCEL SERVICE, INC., Defendant

No. CIV.A.3:02CV2086(JCH).

United States District Court, D. Connecticut.

Sept. 29, 2003.

Lorenzo J. Cicchiello, Chicchiello & Cicchiello, Norwich, CT, for plaintiff.

Mark P. Ladner, Theresa M. Parietti, Morrison & Foerster, New York City, for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS [DKT. NO. 13]

HALL, District Judge.

Plaintiff Audrin Desardouin, a black male of Haitian descent who owns and operates a men's clothing store, filed this federal action against Defendant United States Parcel Service, Inc., alleging state tort law violations and causes of action for racial and ethnic discrimination under a number of federal and state statutes in connection with the defendant's treatment of him as its customer and addressee. Specifically, the plaintiff's complaint alleges: in the First Count, a cause of action for discrimination based on race, national

origin, and ethnicity pursuant to Connecticut General Statutes sections 46a–64, 46a–65, and 46a–66; in the Second Count, various federal causes of action brought pursuant to 42 U.S.C. §§ 1981 and 1982 and Title II and Title VII of the Civil Rights Act of 1964;[1] in the Third Count, a state law claim for negligent infliction of emotional distress; and, in the Fourth Count, a claim for intentional infliction of emotional distress. *See* Complaint [Dkt. No. 18]. The defendants have moved to dismiss the state law claims that make up the First, Third, and Fourth Counts but do not include in their motion the federal claims alleged in the Second Count. *See* Defendant United Parcel Service's Notice of Motion to Dismiss Under Rule 12(b)(6) and Motion for a More Definite Statement Under Rule 12(e) ("Def's Mot. Dismiss") [Dkt. No. 8].[2] The court grants the motion to dismiss only with respect to the First Count, which is dismissed in its entirety, with leave to replead.

## I. FACTS

The plaintiff owns and operates a men's clothing store called A–D Fine Men's Store in Norwich. On or about February of 2001, the plaintiff placed an order with Giorgio Cosani Imports of California (GCI) for the delivery of men's suits at a cost of approximately $11,000.00. The plaintiff arranged for the suits to be shipped collect on delivery ("C.O.D."). Thus, the payment was to be collected at the time of delivery: half of the cost was to be paid with a money order and the remainder with a business check postdated five weeks after the delivery date. Defendant United Parcel Service, Inc. ("defendant" or "UPS"), had made deliveries to the plaintiff before without incident. However, on or about July of 2001, at around 10 a.m., a UPS driver named Robert Allen arrived at the plaintiff's store stating that he had been instructed by his supervisor to leave the plaintiff's shipment at the UPS facility because the plaintiff did not have enough money to pay for the merchandise. Allen allegedly made this remark "in the presence of other people in [the plaintiff's] shop, including customers." Complaint ¶ 5. The plaintiff immediately telephoned Allen's supervisor at UPS, David Pellerin, to inquire about the situation, and Pellerin apologized but also may have "hung up" on the plaintiff.[3] *Id.* Allen then called Pelle-

---

**1.** The plaintiff's claim under 42 U.S.C. §§ 1981 and 1982 alleges racial and ethnic discrimination and interference with his right to make and enforce contracts, respectively. Under this Second Count, he also alleges violations of his "right to purchase, lease, sell, hold, and convey personal property free from racial discrimination" under Title II and Title VII of the Civil Rights Act of 1964. Complaint [Dkt. No 18] at 7.

**2.** This court granted the motion for more definite statement in a margin endorsement dated April 4, 2003 [Dkt. No. 8], and the plaintiff filed his amended complaint on April 10, 2003. Thus, technically, the complaint referred to above, which is docketed as number 18, is an amended complaint. The original complaint [Dkt. No. 1], dated October 23, 2002, was filed in Connecticut Superior Court. The defendant then removed to feder-

al court, alleging federal question and diversity jurisdiction.

For clarification, the Defendant United Parcel Service's Memorandum of Law in Support of Motion Under Rule 12(b)(6) and Rule 12(e) ("Def's Mem Supp.") [Dkt. No. 9] was filed on January 2, 2003, before the original complaint was amended, and thus refers to language from the original complaint that has since been substituted by a more definite statement in the amended complaint. *See* Def's Mem Sup., at 18–19; Defendant United Parcel Service's Reply Memorandum in Further Support of Motion Under Rule 12(b)(6) [Dkt. No. 15] at 10.

**3.** It is difficult to ascertain exactly what facts are being alleged in the complaint. Here, for example, it is unclear whether the conversation simply ended or whether Pellerin actually

rin from the plaintiff's store and received authorization to deliver the goods later that day.

When Allen arrived with the packages later on the same day, he repeated his previous remark about the plaintiff's inability to pay, again in front of people present in the store, who expressed concern and wonder about the situation. One of them asked whether the plaintiff "was being treated this way because he was a black, small business owner." *Id.* ¶ 6. Consistent with the plaintiff's arrangement with GCI, the plaintiff gave the driver the money order and postdated business checks. Also as arranged, the packages bore labels indicating C.O.D. delivery and the correct amount and form of payment.

On July 23, 2001, Allen informed the plaintiff of Pellerin's comment that Allen had not properly collected the checks from the plaintiff and that the payment should have been in the form of money orders instead. Allen also told the plaintiff that in response to Pellerin's comment, Allen had told Pellegrin that he had acted in accordance with the instructions on the UPS packages' labels by accepting the plaintiff's checks.

On July 30, 2001, the plaintiff learned that one of the postdated business checks made payable to GCI had not cleared his account because UPS had allegedly attempted to cash this check before the date to which it had been postdated. Although the defendant has not contacted the plaintiff about this situation, according to the complaint, it is the plaintiff's "understanding that UPS continues to attempt to deposit the post dated check and [he] continues to incur processing

charges" as a result. *Id.* ¶ 5. Upon being informed by the plaintiff of this situation, GCI expressed its displeasure and indicated that the defendant did not have the authority to cash the checks.

In August 2001, the plaintiff arranged for another shipment of men's suits, this time from Giorgio Borani, Maxman, Inc., in Los Angeles, California ("Maxman"). The arrangement between the plaintiff and Maxman, reflected in the shipping instructions, was that a payment of 25% of the total amount [of $9860.00] in the form of cashier's check or money order was to be made on delivery, and a check for the remainder, postdated for payment within 30 days, would also be presented at delivery. *Id.* ¶¶ 14–15.

On September 14, 2001, UPS driver Allen arrived with the shipment but indicated that Mr. Sheehan, a manager at UPS, had given him instructions not to make the delivery until he had collected money orders for each item. After being contacted by the plaintiff, Maxman allegedly faxed a letter to the defendant instructing it to make the delivery in accordance with the agreement between Maxman and the plaintiff. At some point, Mr. Sheehan falsely represented to Maxman that the plaintiff owed UPS $5400.00.

The plaintiff unsuccessfully tried to contact Sheehan, who refused to speak with him about the matter. However, the plaintiff did discuss the situation with Pellegrin, who claimed that he had told Allen to deliver the plaintiff's goods.[4] Pellegrin denied cashing any of the plaintiff's checks made out to third parties, a denial which, according to the plaintiff, seems false in

---

"hung up" on the plaintiff, cutting short their conversation.

4. Based on the complaint, it is unclear whether the plaintiff alleges that Pellegrin's instructions were overruled by Sheehan, who was

his superior, or that Pellegrin's claim that he instructed Allen to deliver the plaintiff's packages appeared to be false in light of Sheehan's directions to the contrary. *Id.* ¶ 22.

light of the defendant having contacted the plaintiff about its attempts to cash these checks.

On September 21, 2001, Allen again arrived at the plaintiff's shop and, in the presence of customers, asked for payment on the GCI shipment. Allen stated that, when he had checked with his supervisor, his supervisor had stated that he did not believe the plaintiff and that the plaintiff owed the defendant $3200.00. The plaintiff provided Allen with documentation suggesting that his supervisor was mistaken.

On October 29, 2001, the plaintiff learned that a UPS representative had remarked to Allen when transferring the plaintiff's goods to him: "This is for your *boy*, Audrin." On November 15, 2001, Allen stated to the plaintiff in the presence of a customer who was in the store at the time: "UPS does not like you." Allen also said that he had been instructed to hold the plaintiff's deliveries and first determine whether the plaintiff had any money with which to make payments. *Id.* ¶ 25.

In defendant's Motion, the defendant moves to dismiss all of the state law claims which comprise the First, Third, and Fourth Counts.

## II. MOTION TO DISMISS STANDARD

Pursuant to Fed.R.Civ.P. 12(b)(6), the defendants have moved to dismiss three of the four counts for failure to state a claim. A motion to dismiss filed pursuant to Rule 12(b)(6) can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering such a motion, the court accepts the factual allegations alleged in the complaint as true and draws all inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232,

236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (quotation omitted).

"While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996). Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2).

The rule also requires that each averment of a pleading shall be simple, concise, and

direct. Fed.R.Civ.P. 8(e)(1). Under the liberal pleading standards of the Federal Rules of Civil Procedure, a plaintiff must disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. Dismissal is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.

*Kittay v. Kornstein*, 230 F.3d 531, 541 (2d. Cir.2000).

## III. DISCUSSION

For the following reasons, the court grants the motion to dismiss, with leave to amend, only with respect to the First

Count of the complaint, which alleges discrimination in violation of the Connecticut Fair Employment Practices Act (CFEPA), Connecticut General Statutes § 46a–51 *et seq.*, specifically, Conn. Gen.Stat. sections 46a–64, 46a–65, and 46a–66. The motion is denied with respect to all other counts.

### A. *First Count: Conn. Gen. Stats, Sections 46a–64, 46a–65, and 46a–66*

The defendant argues that there is no private right of action under Conn. Gen. Stats. § 46a–64, which prohibits discriminatory practices in places of public accommodation. *See Wright v. City of Hartford,* CV 970570863S, 1998 WL 83670, *3, 1998 Conn.Super. LEXIS 433, *8 (Conn.Super.Ct. Feb. 13, 1998) ("The provisions of the CFEPA [that prohibit discriminatory employment practices[,]] General Statutes §§ 46a–58 through 46a–81[,] must be read in conjunction with the act's provisions for the filing of complaints concerning alleged discriminatory practices with the CHRO [Connecticut Human Rights Organization]" pursuant to section 46a–83); *see generally Sullivan v. Board of Police Commissioners,* 196 Conn. 208, 216, 491 A.2d 1096

(1985); *McPhail v. City of Milford,* No. 54506S, 1999 WL 126796, *3, 1999 Conn.Super. LEXIS 428, *9 (Conn.Super.Ct. Feb. 25, 1999).

In response, the plaintiff notes that the language of Conn. Gen. Stats. § 46a–100, which authorizes private causes of action after resort to the CHRO based on allegations of discriminatory practices, has been amended. Although the scope of this statute was once limited to actions alleging violations of section 46a–60, this limiting language was deleted, effective July 1, 1998. The section now reads:

> Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82 [5] and who has obtained a release from the commission in accordance with section 46a–83a or 46a–101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business . . . .

Conn. Gen. Stats. § 46a–100.[6] Thus, according to the plaintiff, " 'any person' who has filed a timely complaint with the

---

**5.** Conn. Gen. Stats. § 46a–82 provides:

(a) Any person claiming to be aggrieved by an alleged discriminatory practice, except for an alleged violation of section 46a–68, may, by himself or his attorney, make, sign and file with the commission a complaint in writing under oath, which shall state the name and address of the person alleged to have committed the discriminatory practice, and which shall set forth the particulars thereof and contain such other information as may be required by the commission. After the filing of a complaint pursuant to this subsection, the commission shall serve upon the person claiming to be aggrieved a notice that: (1) Acknowledges receipt of the complaint and (2) advises of the time frames and choice of forums available under this chapter.

(b) The commission, whenever it has reason to believe that any person has been

engaged or is engaged in a discriminatory practice, may issue a complaint except for a violation of subsection (a) of section 46a–80.

*Id.*

**6.** The old version of Conn. Gen. Stats. § 46a–100 read in relevant part:

Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82, *alleging a violation of section 46a–60* and who has obtained a release from the commission in accordance with section 46a–101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business . . . .

*Id.* (emphasis added).

CHRO and obtained a release to sue letter from the CHRO" can bring a suit pursuant to Conn. Gen. Stats. § 46a–64. Plaintiff's Memorandum in Support of Objection to Motion to Dismiss ("Pl's Mem. Opp.") [Dkt. No. 14] at 17. However, the plaintiff also notes for the first time in his memorandum in opposition that he "did file a timely complaint and obtained the requisite release to sue letter from the CHRO." *Id.* Nowhere does the complaint mention these critical factual allegations, or even allude to them.

■ "In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court is to consider only the allegations contained on the face of the complaint...." 11 *Moore's Federal Practice,* § 56.30[3][a], at 56–217 (Matthew Bender 3d ed.2003). The Second Circuit adheres to this rule and has stated that in deciding such a motion, consideration is limited "to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); *see Chambers v. Time Warner, Inc.,* 282 F.3d 147, 154–55 (2d Cir.2002) ("Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' ") (citations omitted). Limiting the court to consideration of the complaint on a motion to dismiss seems appropriate in light of the fact that, "when a district court considers certain extra-pleading materials and excludes others, it risks depriving the par-

ties of a fair adjudication of the claims by examining an incomplete record." *Chambers,* 282 F.3d at 154–55. Because of the plaintiff's failure to allege in his complaint CHRO's release to sue, the court dismisses the discrimination claim brought pursuant to Conn. Gen. Stats. section 46a–64, with leave to replead, if filed within twenty days.[7]

■ For reasons discussed above, the court must also dismiss the plaintiff's claims brought pursuant to Conn. Gen. Stats. § 46a–65 and § 46a–66, which likewise require a complainant to pursue his discrimination claim first through the administrative procedures provided by the CHRO. Alternatively, the claims under sections § 46a–65 and § 46a–66 are also legally insufficient because the court cannot reasonably infer from the plaintiff's complaint that the defendant qualifies as a "creditor" or that the parties were engaged in a "credit transaction," as required by statute.

Section 46a–66, which is titled "Discriminatory credit practices prohibited," quite simply prohibits "creditors" from discriminating based on sex, age, race, color, religious creed, national origin, ancestry, etc., "in any credit transaction." Conn. Gen. Stats. § 46a–66(a). Section 46a–65, which offers definitions for terms used in subsequent sections, including section 46a–66, defines "creditor" as "any person who *regularly* extends or arranges for the extension of credit for which the payment of a finance charge or interest is required whether in connection with loans, sale of property or services or otherwise." *Id.* (emphasis added). " 'Credit transaction'

**7.** The court notes that "failure to file a timely complaint with the CHRO and to obtain a release from the CHRO deprives the court of subject matter jurisdiction" over the count with respect to which the plaintiff has failed to exhaust. *Okun v. Misiewicz,* No. CV9867084S, 2001 WL 985060, *5, 2001 Conn.Super. LEXIS 2169, *13 (Super.Ct. July 31, 2001).

means any *invitation* to apply for credit, application for credit, extension of credit or credit sale." Conn. Gen. Stats. § 46a–65 (emphasis added). The plaintiff claims that the defendant extended him "credit" by delivering C.O.D. shipments to him as a consignee, or addressee. He cites no case law, nor can this court discover any, to support his construction of the statute. Only by doing violence to the plain language of the statute could this court conclude that the requirements of section 46a–66 are met on the alleged facts, even when viewing them in the light most favorable to the plaintiff. *Cf. Kloth v. Citibank,* 33 F.Supp.2d 115, 121 (D.Conn.1998)(dismissing § 46a–66 claim where plaintiff received harassing phone calls from defendant in its attempts to collect a credit card debt because she did "not make any allegation that Citibank discriminated against her in 'applying for credit, application for credit, extension of credit or credit sale.' "). Thus, the discrimination claims brought pursuant to sections 46a–65 and 46a–66 are also dismissed.

### B. *Second Count: 42 U.S.C. Sections 1981 and 1982*

The defendant has not moved to dismiss the plaintiff's federal claims enumerated in the Second Count of the complaint. Therefore, the court does not address these claims in this ruling, and the count survives.

### C. *Third and Fourth Counts: Negligent and Intentional Infliction of Emotional Distress*

■ The defendant argues that both negligent and intentional infliction of emotional distress claims should be stricken because the conduct alleged is not extreme and outrageous. Defendant United Parcel

Service's Memorandum of Law in Support of Motion Under Rule 12(b)(6) and Rule 12(e) ("Def's Mem Supp.") [Dkt. No. 9] at 7. The plaintiff responds that he has stated a cause of action for both torts and that the factual allegations in his complaint suffice as a matter of law to support the conclusion that the defendant engaged in "extreme and outrageous conduct." The court finds that the plaintiff has alleged sufficient facts to survive a motion to dismiss and thus denies the motion to dismiss with respect these state law tort claims.

■ To establish a claim of intentional infliction of emotional distress under Connecticut law

a plaintiff must plead and prove that (a) defendant[ ] intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of [its] conduct; (b) defendant['s] conduct was extreme and outrageous; (c) defendant['s] conduct caused the plaintiff's distress; and (d) the emotional distress suffered by the plaintiff was severe.

*Mercer v. Brunt,* 272 F.Supp.2d 181, 188 (D.Conn.2002). In contrast, to prove a claim of negligent infliction of emotional distress, the plaintiff must establish that the defendants "knew or should have known that [their] conduct involved an unreasonable risk of causing emotional distress and that the distress, if it were caused, might result in illness or bodily harm." *Buckman v. People Express, Inc.,* 205 Conn. 166, 173, 530 A.2d 596 (Conn. 1987) (emphasis and internal quotation marks omitted). Thus, unlike a claim for intentional infliction of emotional distress, the plaintiff need not show "extreme and outrageous conduct" by the defendant in order to state a cause of action under negligent infliction of emotional distress.[8]

---

**8.** *See, e.g., Perodeau v. City of Hartford,* 259 Conn. 729, 792 A.2d 752 (2002); *Parsons v.*

Because the plaintiff has alleged in his complaint all the necessary elements for both infliction claims, including "extreme and outrageous conduct" with respect to his intentional infliction cause of action, the court will not dismiss either claim on this basis.

■ With respect to the "extreme and outrageous" requirement for intentional infliction claims, "[t]he standard in Connecticut for conduct reaching the level of 'extreme and outrageous' is defined as 'that which exceeds all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.' " *Mercer*, 272 F.Supp.2d at 188 (citation omitted). "The question of whether the defendant['s] conduct is sufficient to satisfy the element of extreme and outrageous conduct is one for the court. Only where reasonable minds differ does it become a question for the jury." *Whitaker v. Haynes Construction Company, Inc.*, 167 F.Supp.2d 251, 254 (D.Conn.2001).

Because the allegations made by the plaintiff concerning the defendant's behavior toward him could arguably constitute "extreme and outrageous conduct" if taken in the light most favorable to the plaintiff, he has met the liberal pleading requirements of Fed. Rule Civ. P. 8. *Cf. Phelps v. Kapnolas*, 308 F.3d 180, 186–87 (2d Cir. 2002). Thus, the court denies the defendant's motion to dismiss the Third and Fourth Counts on these grounds.

### D.  *Preemption of State Law Claims*

■ In the alternative, the defendant argues that all of the plaintiff's state law claims comprising the First, Third, and Fourth Counts must be dismissed because they are preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. §§ 14501(c)(1) and 41713(b)(4), and by the Carmack Amendment, 49 U.S.C. § 14706, or federal common law.[9] The plaintiff responds, in part, that FAAAA preemption is inapplicable here because the state laws upon which his claims are based do not "relate" to a "price, route, or service" of the carrier, here, UPS. In addition, the plaintiff argues

*United Technologies Corp.*, 243 Conn. 66, 700 A.2d 655 (1997); *Buckman v. People Express, Inc.*, 205 Conn. 166, 173, 530 A.2d 596 (1987); *Morris v. Hartford Courant*, 200 Conn. 676, 513 A.2d 66 (1986); *Montinieri v. S. New England Tel. Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978). *Cf. Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 442–448, 449 n. 13, 815 A.2d 119 (2003); *id.* at 451–52, 815 A.2d 119 (Borden, J., concurring) ("Put another way, where the defendant's state of mind is purposefully to inflict emotional distress on the plaintiff, the plaintiff may not recover unless the defendant's conduct in pursuance of that intent is also extreme and outrageous; but where the defendant did not have such a malevolent state of mind, but merely was negligent, the plaintiff may recover without having to prove that the conduct engaged in by the defendant was extreme and outrageous."). *See also DeCorso v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 78 Conn.App. 865, 874–880, 829 A.2d 38 (first approving the dismiss-

al of intentional infliction claim for failure to show outrageous and extreme conduct and later upholding dismissal of negligent infliction claim on entirely different grounds); *Edwards v. Community Enterprises, Inc.*, 251 F.Supp.2d 1089, 1105–06 (D.Conn.2003)(granting motion to dismiss intentional infliction claim for failure to show outrageous and extreme conduct but refusing to dismiss negligent infliction claim); *Armstead v. Stop & Shop Cos.*, No. 3:01cv1489 (JBA), 2003 WL 1343245, **5–6, 2003 U.S. Dist. LEXIS 4107, *17–19 (D.Conn. March 17, 2003)(discussing distinct conduct requirements for intentional and negligent infliction claims).

9.  Because it is unclear based on the plaintiff's complaint by what means of transportation the plaintiff's goods were shipped, the following discussion of preemption assumes that they could have been shipped using either ground or air service.

that the Carmack Amendment preempts only a shipper's state law remedies against a carrier for loss or damage to interstate shipments. The court agrees with the plaintiff and denies the defendant's motion to dismiss the remaining state claims on preemption grounds.

The Federal Aviation Authorization Administration Act ("FAAAA") preempts state law relating to the services of interstate carriers such as UPS. 49 U.S.C. §§ 14501(c)(1) and 41713(b)(4). These preemptive statutes preclude the enactment or enforcement of state laws, or claims arising out of state law, related to the "price, route, or service" of carriers such as UPS. The provisions are modeled on the language found in the Airline Deregulation Act of 1978, 49 U.S.C. §§ 1305(a)(1) ("ADA"); and the preemptive clauses of these statutes are interpreted broadly and expansively. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.Ed.2d 157[ ] (1992); *Deerskin Trading Post. Inc. v. United Parcel Serv. of Am. Inc.*, 972 F.Supp. 665, 672 (N.D.Ga.1997) (preemption applies against any tort action "where the subject matter of the action is related to the carrier's prices, routes, or services. . ."); *see also American Airlines. Inc. v. Wolens*, 513 U.S. 219, 228, 115 S.Ct. 817, 130 L.Ed.2d 715[ ] (1995) (state consumer fraud statute preempted by ADA).

. . . . .

Analogously, in the context of passenger airline services, courts have recognized that "Congress did not intend to displace or foreclose all tort actions arising under state law," *Somes v. United Airlines, Inc.*, 33 F.Supp.2d 78, 84 (D.Mass.1999).

*Rockwell v. UPS*, 2:99–CV–57, 1999 WL 33100089, **1–2, 1999 U.S. Dist. LEXIS 22036, *3–6 (D.Vt. July 7, 1999).

Thus, the issue before this court is "whether [p]laintiff's claims relate to the 'price, route or service' provided by UPS," *id.*, which courts have translated as "having a significant economic effect upon them," *Travel All Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir.1996) (*"Travel All "*). In what is perhaps the leading case from the Second Circuit on this subject, *Abdu–Brisson v. Delta Airlines*, 128 F.3d 77 (2d Cir.1997), the court observed:

> The "related to" language of the ADA provides neither a predictable nor practical formula for distinguishing preempted from non-preempted state and local laws, and the Supreme Court has provided little guidance as to the meaning of "related to" after *Morales* and *Wolens*.

*Id.* at 82.[10] In attempting to provide some guidance, however, the court explained:

> In possible preemption areas where common federal and state interests ex-

---

**10.** The Seventh Circuit Court of Appeals in its decision in *Travel All Over the World*, 73 F.3d at 1433, agreed:

> We note that courts have reached divergent results regarding whether claims for slander and defamation are preempted by the ADA under *Morales*. *Compare Fenn v. American Airlines, Inc.*, 839 F.Supp. 1218, 1223 (S.D.Miss.1993) (finding specific claims for slander unrelated to airline "services") *with Chukwu v. Board of Directors British Airways*, 889 F.Supp. 12, 14

(D.Mass.1995) (finding specific claims for slander related to airline "services") *and Pearson v. Lake Forest Country Day Sch.*, 262 Ill.App.3d 228, 633 N.E.2d 1315, 1320–21, 199 Ill.Dec. 324 (1994) (same). *Morales* does not permit us to develop broad rules concerning whether certain types of common-law claims are preempted by the ADA. Instead, we must examine the underlying facts of each case to determine whether the particular claims at issue "relate to" airline rates, routes or services.

ist, courts should seek, if possible, some reasonable and uniform accommodation which does not frustrate either the full congressional purposes and objectives or state policies in determining the relationship between federal and state laws. If that is not possible, and state law interferes and conflicts with federal law, then federal law must prevail.... If state laws, however, are preempted merely because they can be said to broadly and generally "relate to prices or services" only in some tenuous, remote or peripheral way and thus preempted, then it is federal law which is unnecessarily interfering with legitimate state laws and policies. We do not believe that congressional intent should be so broadly interpreted without clear justification.

*Id.* at 86. The court in *Abdu–Brisson* ultimately concluded that the defendant, Delta Air Lines, had not met its burden of showing that the airline pilots' state claims challenging aspects of the post-bankruptcy integration of Delta and Pan Am "affected" its prices or services. *Id.* at 85.

At this stage in the proceedings, viewing all the allegations in the light most favorable to the plaintiff, the court cannot conclude that the plaintiff's claims are preempted, particularly in light of the Second Circuit precedent limiting the reach of preemption under the ADA and, by analogy, the FAAAA. The Seventh Circuit's decision in *Travel All,* 73 F.3d 1423, which dealt with facts similar to those presented here, is instructive. The *Travel All* plaintiffs, a travel agency and its president, sued a Saudi airlines after it cancelled confirmed reservations for a tour group of its clients, and made harmful statements about the agency to these clients. The court first held that the plaintiffs' slander and defamation claims were not preempted:

... Saudia falsely told Travel All's clients that Travel All was not a reputable company, that Travel All had not booked seats for them, that Travel All often lied to its clients about booking seats, and that [Travel All's president] would not be available to help them. These statements, although they refer to Travel All's services, certainly do not refer to Saudia's rates, routes, or services-in fact, these statements do not refer to Saudia at all. Moreover, the statements themselves are not "services" provided by Saudia within the meaning of the ADA.... Thus, the slander and defamation claims do not expressly refer to airline rates, routes, or services. In addition, these claims do not have the "forbidden significant [economic] effect" on airline rates, routes, or services, as contemplated by *Morales.* It is difficult for us to envision how allowing tort claims based on an airline's knowingly false statements about a travel agency would have even a "tenuous, remote or peripheral" economic effect on the rates, routes, or services that the airline offers.

*Id.* at 1433. The court then proceeded to rule, preliminarily, that the plaintiffs' intentional tort claims, for infliction of emotional distress, among others, would also survive preemption analysis to the extent that they were "based on the slanderous and defamatory comments alone." *Id.* at 1434. However, these claims would be preempted to the extent that they challenged airline "services," such as "ticketing," or "the transportation itself," e.g., "the airline's refusal to transport passengers who had booked their flights through Travel All." *Id.*

The fact that the plaintiff's complaint in this case expressly refers to the defendant's "services" cannot serve as a basis for concluding that his state law claims are

preempted. *Id.* at 1434. Although the facts alleged in the complaint "may relate tangentially" to the services and prices of the defendant, *Lewis v. Continental Airlines, Inc.,* 40 F.Supp.2d 406, 415 (S.D.Tx. 1999), to the extent that the claims are "premised on unreasonable conduct that is unnecessary to the provision of a service," *id.* at 412, they are not preempted. "[S]uits stemming from outrageous conduct on the part of an airline toward a passenger generally will not be preempted under the ADA because the conduct too tenuously relates or is unnecessary to an airline's services." *Travel All,* 73 F.3d at 1434. Moreover, the defendant simply has not shown that the plaintiff's claims will have "the forbidden significant economic effect" on rates, routes, or services as contemplated by the Supreme Court's decision in *Morales. Id.* at 1433. To the extent Desardouin's claims for infliction of emotional distress do not "relate" to the defendant's services and thus do not have a significant impact on these services, his state law claims are not preempted by the FAAAA. *Id.* at 1434.

However, to the extent some of the factual allegations could be construed as relating to services provided by he defendant, and discovery evidences that possibility, the court invites the parties to revisit the FAAAA preemption question at summary judgment. As the *Abdu–Brisson* opinion suggested:

> sometimes even a jurisdictional issue may even require a lengthy trial. This may be another such case where preemption can not be easily determined from the pleadings. Thus, while in the

abstract post-retirement medical benefits and pilot pay scale could affect price, we do not see that substantiated in this particular case.

*Id.* at 84 (footnote omitted); *Travel All,* 73 F.3d at 1434 ("After further development of the factual underpinnings of the claims, the district court will then be able to make definitive rulings on which claims are preempted."); *see also Woodson v. U.S. Airways, Inc.,* 67 F.Supp.2d 554, 557 (M.D.N.C.1999) (stating that "the court is not persuaded at this stage" that preemption applies here and postponing a final decision with respect to the issue until summary judgment).

Likewise, neither the Carmack Amendment, 49 U.S.C. § 14706, nor federal common law[11] preempts the plaintiff's state law claims. The Carmack Amendment created a nationally uniform rule of carrier liability concerning interstate shipments, providing the sole remedy for damages for loss of property shipped and thereby preempting all state or common law remedies available to a shipper against carriers for loss or damage to goods during shipment. *See Project Hope v. M/V Ibn Sina,* 250 F.3d 67, 74 (2d Cir.2001); *North Am. Van Lines v. Pinkerton Sec. Sys.,* 89 F.3d 452, 456 (7th Cir.1996); *Ward v. Allied Van Lines, Inc.,* 231 F.3d 135, 138 (4th Cir.2000). Because the instant suit does not represent an action by a shipper for injuries resulting from the loss or damage to an interstate shipment, the Carmack Amendment does not preempt the plaintiff's state law claims. Thus, the court declines to dismiss the plaintiff's state law claims on preemption grounds.

---

11. The Carmack Amendment applies only when the packages are transported exclusively by motor carrier. 49 U.S.C. § 13506(a)(8). Informed by the same policies and principles as the Carmack Amendment, federal common law governs where packages are transported by air. *See, e.g., Nippon Fire & Marine Ins.*

*Co. v. Skyway Freight Systems, Inc.,* 235 F.3d 53, 59 (2d Cir.2000); *Vogelsang v. Delta Air Lines, Inc.,* 302 F.2d 709, 712 (2d Cir.1962). Because the court cannot determine from the complaint how the plaintiff's packages were shipped, the court assumes either source of law could apply on these facts.

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Dkt. No. 13] is GRANTED IN PART and DENIED IN PART. The motion to dismiss is granted, with leave to amend, with respect to the First Count, which alleges discrimination in violation of Conn. Gen.Stat. sections 46a–64, 46a–65, and 46a–66. The defendant's motion is denied as to all other claims.

**SO ORDERED.**