## GAIL DECORSO *v.* WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC., ET AL.
### (AC 22682)

Bishop, Mihalakos and Dupont, Js.

Argued April 30—officially released August 19, 2003

*John R. Williams*, for the appellant (plaintiff).

*Mario F. Moreno* and *Charles A. Deluca*, with whom, on the brief, was *Dierdre A. Murray*, for the appellees (defendants).

*Opinion*

DUPONT, J. The plaintiff, Gail DeCorso, appeals from the judgment rendered by the trial court following the granting of the motion for summary judgment in favor of the defendants[1] as to both counts of the plaintiff's complaint, which alleged intentional infliction of emotional distress and negligent infliction of emotional distress. We affirm the judgment of the trial court.

The questions for resolution are whether (1) the conduct of the individual defendants, elders of Jehovah's Witnesses, was extreme and outrageous during the relevant periods of time, as alleged in the plaintiff's complaint, for purposes of sustaining a cause of action for intentional infliction of emotional distress and (2) the first amendment to the United States constitution bars the plaintiff's cause of action for negligent infliction of emotional distress.

---

[1] The defendants are Watchtower Bible and Tract Society of New York, Inc. (Watchtower), the corporate organization of Jehovah's Witnesses, and the individual defendants, Charles E. Bradshaw, Charles Thomas, James R. Waddington and George Griffin, elders of the Jehovah's Witness congregation. Watchtower and the individual defendants filed separate answers and separate defenses to the plaintiff's complaint that are nearly identical. The defendants filed a joint brief. At oral argument, counsel for Watchtower addressed count two of the plaintiff's complaint, which alleged negligent infliction of emotional distress, and counsel for the individual defendants addressed count one of her complaint, which alleged intentional infliction of emotional distress claim. Unless otherwise noted, the word "defendants" as used in this opinion includes all the defendants.

## I

## PROCEDURAL HISTORY AND STANDARD OF REVIEW

The operative complaint is dated November 13, 2000, and alleges that certain incidents took place beginning in 1975 and continuing through the plaintiff's disfellowship[2] from the Jehovah's Witnesses in April, 1996. It was filed "pro se" and "in lieu of John R. Williams," who is appellate counsel for her.[3]

The plaintiff was baptized into the Jehovah's Witnesses religion in 1972. She alleges that, as such, and according to teachings of the Jehovah's Witnesses, she was under the control and supervision of the defendants. In October, 1975, the plaintiff married Michael DeCorso, who also was a member of the Jehovah's Witnesses. From the beginning of their marriage through their divorce in November, 1994, the plaintiff allegedly suffered continual emotional, physical and sexual abuse by her husband.

The plaintiff further alleged that throughout the duration of the problems within her marriage, she sought the guidance and instruction of the defendants, as was required by teachings of the Jehovah's Witnesses. At all times, the counseling she received from the defendant elders was spiritual in nature, and based on the writings and teachings of the scriptures as interpreted by the religion of the Jehovah's Witnesses.

The plaintiff alleged that she had conversations with each of the individual defendants regarding the alleged abuse she suffered and nothing was done by them to alleviate it. She alleged that the defendants counseled her to continue to endure the alleged abuse. Throughout

---

[2] "Disfellowhip" is a process by which a member of the congregation of the Jehovah's Witnesses is excommunicated or expelled from the congregation for "wrongdoing."

[3] Attorney Williams filed a brief for the plaintiff and argued the matter in this court.

her complaint, the plaintiff cites various writings and scripture of the Jehovah's Witnesses, alleging that the defendant elders did not act in conformity with their own religious teachings. The plaintiff additionally alleged that the defendants voiced derogatory remarks about her throughout that time and continuing until her disfellowship in April, 1996.

After deposing the plaintiff, the defendants filed a motion for summary judgment. The defendants claimed that the alleged acts of misconduct were insufficient as elements of an action for negligent or intentional infliction of emotional distress. The motion also claimed that the first amendment barred the plaintiff's action because inquiry into her allegations would constitute excessive entanglement of the state into religious affairs. The court granted the defendants' motion as to both counts of her complaint.

The court granted the motion as to the intentional infliction of emotional distress count because one of the elements of that cause of action, extreme and outrageous conduct, was not established by the plaintiff's allegations in her complaint. The court granted the motion as to negligent infliction of emotional distress because the first amendment precludes the court from involvement or excessive entanglement in the religious tenets of Jehovah's Witnesses.

The plaintiff filed her original complaint in three counts on March 25, 1998, including a third count of breach of contract. That complaint alleged acts and omissions occurring from early 1976 to 1995. A subsequent revised compliant contained the same three counts, but made additional factual allegations including allegations of events occurring through her disfellowship in March, 1996, and even more specific references to teachings and scriptures of the Jehovah's Witnesses. The plaintiff next filed an amended complaint on August

2, 1999. It contained essentially the same factual allegations as the prior complaints, but added an additional fourth count of breach of fiduciary duty.

On October 12, 1999, in accordance with Practice Book § 10-39 et seq., the defendants filed a motion to strike the plaintiff's complaint because the applicable statute of limitations had expired as to each count and because the causes of action were barred by the first amendment. The court, in a memorandum of decision dated March 21, 2000, granted the defendants' motion on statute of limitations grounds as to counts one, two and four, and on first amendment grounds as to count three.

Subsequently, on April 5, 2000, the plaintiff, pro se, filed another amended complaint. The defendant filed an objection to that complaint on the ground that the plaintiff had failed to file a substitute complaint within the prescribed time and also filed a motion for judgment because the amended complaint did not overcome the deficiencies of the previous revised complaint. The court sustained the defendants' objection to the amended complaint and gave the plaintiff fifteen days to file a substitute pleading. The court denied the defendants' motion for judgment.

On June 2, 2000, the plaintiff filed a substitute complaint. The complaint alleged the same four counts and contained similar allegations as were stated in the August, 1999 complaint, as well as more detailed allegations regarding the events leading to her disfellowship in April, 1996.

On July 7, 2000, the defendants filed a motion to strike, arguing that counts one, two and four were barred by the statute of limitations, counts one, three and four failed to state a claim on which relief could be granted and that the entire complaint was barred by the first amendment.

The court, in its October 16, 2000 decision, did not address the statute of limitations issue on the motion to strike because the plaintiff had alleged additional dates in her substitute complaint and the parties no longer agreed that the relevant dates were accurate. See *Forbes* v. *Ballaro*, 31 Conn. App. 235, 239, 624 A.2d 389 (1993) (motion to strike raising statute of limitations defense improper when parties do not agree complaint sets forth all pertinent facts). The court, therefore, addressed the merits of the motion to strike and granted it as to the third and fourth counts. The third count was stricken on first amendment grounds, and the fourth count was stricken because the court concluded that the complaint did not establish facts sufficient to show that a fiduciary relationship existed. The court did not strike the first and second counts of intentional and negligent infliction of emotional distress.

Thereafter, on November 13, 2000, the plaintiff filed a second substitute complaint. The complaint contained essentially the same allegations as appeared in the previous complaint of June, 2000, but alleged only intentional and negligent infliction of emotional distress, as the other two counts had been stricken. It is the complaint that is the subject of this appeal.

The defendants filed their answers and special defenses to that complaint. As special defenses, the defendants claimed, inter alia, that the applicable statute of limitations barred the plaintiff's claims, the complaint failed to state a claim on which relief could be granted, the first amendment barred the claims, and the alleged conduct was not extreme and outrageous. The defendants, in their answer and in their special defense of the statute of limitations, stated that the time frame of the plaintiff's allegations encompassed October, 1975, to November, 1994, the length of her marriage.

The court, in granting the defendants' motion for summary judgment, which is the subject of this appeal, concluded that as a matter of law, the individual defendants' alleged conduct was not extreme and outrageous and, therefore, did not support a cause of action for intentional infliction of emotional distress. The court also concluded that the first amendment barred the litigation of the plaintiff's negligent infliction of emotional distress count.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . .

"The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence. . . . If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof. . . . When a party files a motion for summary judgment and there [are] no contradictory affidavits, the court properly [decides] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof. . . . Finally, the scope of our review of the trial court's decision to grant the [defendants' motions] for summary judgment is plenary." (Citations omitted; internal quota-

tion marks omitted.) *Barile* v. *LensCrafters, Inc.,* 74 Conn. App. 283, 285–86, 811 A.2d 743 (2002).

## II

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The plaintiff claims that the court improperly granted the defendants' motion for summary judgment on her intentional infliction of emotional distress claim because the facts alleged in her second substitute complaint establish that the defendants' conduct was extreme and outrageous. The court concluded to the contrary.

A claim of intentional infliction of emotional distress requires a plaintiff to prove the following elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Campbell* v. *Plymouth,* 74 Conn. App. 67, 77, 811 A.2d 243 (2002).

The court determined that as a matter of law, none of the alleged conduct or acts of the defendants were "extreme and outrageous" as required for a claim for intentional infliction of emotional distress. Although we affirm the judgment of the court as to that count, we do not reach the question of whether the alleged conduct, as a matter of law, was "extreme and outrageous," as to the allegations of events occurring prior to March, 1995. See *Torringford Farms Assn., Inc.* v. *Torrington,* 75 Conn. App. 570, 571 n.2, 816 A.2d 736 (judgment may be affirmed for reason different from that relied on

by trial court), cert. denied, 263 Conn. 924, 823 A.2d 1217 (2003).

The plaintiff filed her original complaint on March 25, 1998. The applicable statute of limitations period for a claim of intentional infliction of emotional distress is three years. General Statutes § 52-577. Thus, in the usual case, any claims concerning behavior prior to March 25, 1995, would be time barred.

In this case, the defendants previously had filed motions to strike, claiming that the allegations were time barred. After the defendants' last motion to strike the count of intentional infliction of emotional distress was denied on that basis, the defendants filed an answer and again asserted the defense of the statute of limitations by way of their first special defense. The special defense of a time bar is appropriately the basis of a motion for summary judgment if the statute of limitations has, in fact, run. Id., 573. In such cases, our review is plenary. Id.

On the basis of the allegations of the plaintiff's complaint, and the allegations in the defendants' answer and special defenses, the parties do not dispute some of the dates during which the plaintiff sought the advice of the individual defendants. They agree that some of the operative events occurred between October, 1975, and November, 1994.

The plaintiff claims that because the corporate defendant had a rule that its members could not litigate in civil court, she did not bring her action until her membership in the congregation was terminated, and, therefore, the statute of limitations should have been tolled until her disfellowship in 1996. She makes no claim of fraud by the defendants that induced her to refrain from bringing her action and does not cite any case that would allow us to toll the statute because of the alleged rule of the corporate defendant.

In the absence of fraud, any claims of the plaintiff as to events occurring before March 25, 1995, would usually be time barred. "Only in actions that fairly can be characterized as invoking equitable considerations may a court consider the applicability of concepts of fairness and equity" in determining the tolling of statutes of limitations. Id., 576. This case is not an appropriate one for such a conclusion because of the reasons as discussed in part III. We therefore review only those allegations in the complaint concerning events occurring after March 25, 1995, to determine whether the plaintiff has shown the defendants' conduct to be extreme and outrageous.

We conclude that, as a matter of law, the alleged acts and omissions, which mainly consisted of derogatory remarks about and verbal mistreatment of the plaintiff in the course of the disfellowship proceedings that took place in the spring of 1996, were not "extreme and outrageous." "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Internal quotation marks omitted.) *Appleton v. Board of Education*, 254 Conn. 205, 211, 757 A.2d 1059 (2000). Therefore, because the relevant allegations do not describe extreme and outrageous conduct, as defined by our case law, we conclude that the defendants' motion for summary judgment was granted properly as to the claim of intentional infliction of emotional distress.

## III

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The plaintiff also claims that the court improperly granted the defendants' motion for summary judgment on her claim of negligent infliction of emotional distress. She argues that adjudication of the merits of her

cause of action would not involve excessive entanglement in religion in contravention of the first amendment. She argues that her claim is based on negligence arising within the context of marital counseling, which would not require adjudication of religious issues.[4] The defendants argue that their alleged acts and omissions in their counseling of and relationship with the plaintiff are protected by the free exercise and establishment clauses of the first amendment.

To establish a claim of negligent infliction of emotional distress, the plaintiff must prove the following elements: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 444, 815 A.2d 119 (2003). We consider the impact of those elements, as alleged in the plaintiff's complaint, on the exercise by the defendants of their first amendment rights.

The first amendment, applicable to the states through the fourteenth amendment to the United States constitution; see *Cantwell* v. *Connecticut*, 310 U.S. 296, 303, 60 S. Ct. 900, 84 L. Ed. 1213 (1940); provides in relevant part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." "The values underlying these two provisions relating to religion have been zealously protected, sometimes even at the expense of other interests . . . ." *Wisconsin* v. *Yoder*, 406 U.S. 205, 214, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972). Thus, the first amendment has been interpreted broadly to "severely [circum-

---

[4] We note that throughout her complaint and deposition, the plaintiff stated that the counseling she received was based on the scriptures and was spiritual in nature.

scribe] the role that civil courts may play in resolving . . . disputes" concerning issues of religious doctrine and practice. (Internal quotation marks omitted.) *Rector, Wardens & Vestrymen of Trinity-St. Michael's Parish, Inc.* v. *Episcopal Church in Diocese of Connecticut*, 224 Conn. 797, 801, 620 A.2d 1280 (1993); see also *Kreshik* v. *St. Nicholas Cathedral*, 363 U.S. 190, 190–91, 80 S. Ct. 1037, 4 L. Ed. 2d 1140 (1960); *Kedroff* v. *St. Nicholas Cathedral*, 344 U.S. 94, 120–21, 73 S. Ct. 143, 97 L. Ed. 120 (1952).

Because no Connecticut appellate court has determined the extent to which the first amendment provides protection to religious entities and officials from tort liability on facts similar to those involved in this case, we examine the opinions of the United States Supreme Court and courts of other jurisdictions that have considered similar issues for our resolution of this case.

In addressing the first amendment as it relates to actions involving religious officials and entities, courts have focused on either the free exercise clause or establishment of religion clause of the first amendment. The establishment clause prohibits the sponsorship, financial support or active involvement in religious matters by the government. *Lemon* v. *Kurtzman*, 403 U.S. 602, 612–13, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971). It is the establishment clause and its "excessive entanglement" prohibition with which we are here involved, as well as the free exercise clause. See generally *Waldman* v. *Village of Kiryas Joel*, 207 F.3d 105 (2d Cir. 2000); *Sands* v. *Living Word Fellowship*, 34 P.3d 955 (Alaska 2001); *Nally* v. *Grace Community Church of the Valley*, 47 Cal. 3d 278, 253 Cal. Rptr. 97, 763 P.2d 948 (1988) (en banc), cert. denied, 490 U.S. 1007, 109 S. Ct. 1644, 104 L. Ed. 2d 159 (1989); *O'Connor* v. *Diocese of Honolulu*, 77 Haw. 383, 885 P.2d 361 (1994); *Murphy* v. *I.S.K. Con. of New England, Inc.*, 409 Mass. 842, 571 N.E.2d 340 (en banc), cert. denied, 502 U.S. 865, 112 S. Ct. 191, 116

L. Ed. 2d 152 (1991); *Odenthal* v. *Minnesota Conference of Seventh-Day Adventists*, 649 N.W.2d 426 (Minn. 2002) (en banc).

Under "excessive entanglement" analysis, civil tort claims requiring courts to review and to interpret religious doctrine and practices are barred by the first amendment. *Franco* v. *Church of Jesus Christ of Latter-day Saints*, 21 P.3d 198, 203 (Utah 2001), citing *Serbian Eastern Orthodox Diocese* v. *Milivojevich*, 426 U.S. 696, 709–10, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976).

"The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires. Thus, the First Amendment obviously excludes all governmental regulation of religious *beliefs* as such. . . . The government may not compel affirmation of religious belief . . . punish the expression of religious doctrines it believes to be false . . . impose special disabilities on the basis of religious views or religious status . . . or lend its power to one or the other side in controversies over religious authority or dogma . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Employment Division, Dept. of Human Resources of Oregon* v. *Smith*, 494 U.S. 872, 877, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990).

Upon review of the record, we conclude that the court correctly determined that it could not consider the plaintiff's negligent infliction of emotional distress count without excessively entangling itself in matters of the Jehovah's Witnesses religion and burdening the free exercise rights of the defendants.

The essential facts of the plaintiff's allegations, viewed in the light most favorable to her, are as follows. Throughout her abusive marriage, the plaintiff sought the spiritual counsel of the individual defendant elders and other elders within the defendant church. In her

allegations about her marital situation, she alleges that at all times the elders counseled her in accordance with teachings of the Jehovah's Witnesses. Allegedly, at the direction of the elders, the plaintiff stayed in her abusive marriage and suffered emotional distress separate from the distress she suffered as a result of her marriage.

As those alleged facts demonstrate, the plaintiff's claims cannot be addressed without violating the first amendment. The plaintiff's allegations are essentially that she sought counsel from the defendants and that they negligently caused her emotional distress in giving her bad advice contrary to teachings of the Jehovah's Witnesses. In fact, throughout her complaint, the plaintiff cites to scripture and publications of the Jehovah's Witnesses, which, according to the plaintiff, show what the defendants should have done. As other courts have recognized, that is a claim of clergy malpractice, which usually is barred by first amendment principles.

For example, in *Franco* v. *Church of Jesus Christ of Latter-day Saints*, supra, 21 P.3d 206, a case with very similar facts to those alleged in this case, the trial court dismissed the plaintiffs' claim of negligent infliction of emotional distress because it was barred by the first amendment.[5] In *Franco*, a seven-year-old girl had been so severely sexually abused as a young child that she repressed the memory of the abuse until she was fourteen years old. Id., 200. Upon the child's recalling the sexual abuse, she and her parents, members of the Church of Jesus Christ of Latter-day Saints, sought counseling from their local bishop and stake[6] president. Id., 200. Both advised the plaintiffs to "forgive, forget,

---

[5] The trial court also dismissed a claim of intentional infliction of emotional distress, but not on first amendment grounds. *Franco* v. *Church of Jesus Christ of Latter-day Saints*, supra, 21 P.3d 206–207.

[6] A stake is an ecclesiastical division of the Church of Jesus Christ of Latter-day Saints. *Franco* v. *Church of Jesus Christ of Latter-day Saints*, supra, 21 P.3d 200 n.3.

and seek [a]tonement." Id., 201. They also referred the family to an unlicensed family counselor, who also told the plaintiffs to forgive and forget and not go to the police. Id. After finally seeing another counselor and reporting the abuse to the police, the plaintiff daughter was " 'ostracized and denigrated' " by the members of her local church ward, with the acquiescence of the bishop and stake president. Id.

The defendants argued that the plaintiffs' claims were barred by the establishment clause and, thus, the Supreme Court of Utah analyzed the claims under that clause. Id. The court stated that although the entanglement doctrine does not bar all tort claims against clergy for misconduct, "it is well settled that civil tort claims against clerics that require the courts to review and interpret church law, policies, or practices in the determination of the claims are barred by the First Amendment under the entanglement doctrine." Id., 203. The court further commented that "courts throughout the United States have uniformly rejected claims for clergy malpractice under the First Amendment" because such claims would "necessarily entangle the court in the examination of religious doctrine, practice, or church polity—an inquiry that . . . is prohibited by the Establishment Clause." Id., 204. Analogizing the *Franco* plaintiffs' claim to one for clergy malpractice, the Supreme Court of Utah upheld the dismissal of the plaintiff's negligent infliction of emotional distress claim on first amendment grounds. Id., 206.

Similarly, in the present case, any analysis of the plaintiff's claims would require a court to delve into religious issues, which is prohibited by the first amendment. Determining whether the defendants' counseling created an unreasonable risk of emotional harm or that the plaintiff's distress was foreseeable would require a court to evaluate the proprieties of religious teachings. Furthermore, the plaintiff cites certain Jehovah's scrip-

tures, which would require the court to evaluate whether the defendants counseled in accordance therewith.

Under both the free exercise clause and the establishment clause, the first amendment prohibits civil courts from resolving disputed issues of religious doctrine and practice. We conclude that the court properly granted the defendants' motion for summary judgment as to the count of negligent infliction of emotional distress.

The judgment is affirmed.

In this opinion the other judges concurred.