Michael SPENCER, Plaintiff,

v.

State of CONNECTICUT, City of Stamford, Stamford Police Department, Thomas Snyder, Frederick Caruso, Eugene Dohmann, Larry Eisenstein, Douglas Robinson, and Wayne Scutari, Defendants.

No. 3:06CV01209 (DJS).

United States District Court, D. Connecticut.

June 18, 2008.

Paul D. Reynolds, Meriden, CT, for Plaintiff.

James V. Minor, City of Stamford, Stamford, CT, for Defendant.

---

### *MEMORANDUM OF DECISION AND ORDER*

DOMINIC J. SQUATRITO, District Judge.

The plaintiff, Michael Spencer ("the Plaintiff") brought this action against the defendants, the State of Connecticut, the City of Stamford, the Stamford Police Department, Thomas Snyder, Frederick Caruso, Eugene Dohmann, Larry Eisenstein, Douglas Robinson, and Wayne Scutari alleging violations of his right to be secure against unreasonable searches as guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 7 of the Constitution of the State of Connecticut. The Plaintiff also alleged state law claims for the damage done to his home by the Defendants, and for the emotional distress Spencer suffered as a result of the Defendants' actions. Moreover, the Plaintiff has raised the issues of malicious prosecution, planting evidence, and false arrest.

This case was initially assigned to the Honorable Janet C. Hall. On December 19, 2006, the State of Connecticut and Thomas Snyder moved to dismiss all the claims against them. (*See* dkt. # 17.) On April 19, 2007, Judge Hall granted that motion. *See Spencer v. City of Stamford,* Civil Action No. 3:06–cv–1209 (JCH), 2007 WL 1186042 (D.Conn. April 19, 2007). The case was subsequently transferred to the undersigned. Now pending before the court is a motion for summary judgment (dkt. # 47) by the remaining defendants, namely, the City of Stamford, the Stamford Police Department, Frederick Caruso, Eugene Dohmann, Larry Eisenstein, Douglas Robinson, and Wayne Scutari (collectively, "the Defendants"). For the reasons that hereafter follow, the Defendants' motion for summary judgment (**dkt. # 47**) is **GRANTED.**

### I. FACTS

This federal civil case concerns the Plaintiff's involvement in a state criminal case that was heard in the Connecticut court system. The Supreme Court of Connecticut has detailed the underlying facts

of this case in *Connecticut v. Spencer,* 268 Conn. 575, 578–81, 848 A.2d 1183 (2004), which the Plaintiff has incorporated by reference in his complaint. These underlying facts are not in dispute.

On April 12, 2000, the sheriff's office of Shelby County, Tennessee notified the Stamford Police Department that it had intercepted a Federal Express parcel containing approximately twenty-seven pounds of marijuana. The parcel was addressed to a "Sylvia Sloan" at 16 Lipton Place, Stamford, Connecticut. On the basis of this information, the Stamford police surveilled the designated residence and observed that it appeared to be a multifamily house. Stamford Police Department records revealed that in February, 2000, officers had responded to a call at that address concerning a domestic disturbance involving the Plaintiff and his wife.

On the morning of April 13, 2000, the Stamford police took possession of the parcel from the Stamford Federal Express office and conducted a field test, which revealed that the parcel's contents were, in fact, marijuana. The Stamford police then replaced approximately five pounds of the marijuana in the box and resealed it for delivery. Later that morning, the Stamford police, working with the statewide narcotics task force, conducted a "controlled delivery" of the parcel to 16 Lipton Place. Police officers surveilled the residence from vantage points approximately fifty to sixty feet away while one of the Defendants, Frederick Caruso ("Caruso"), delivered the parcel. Caruso, dressed in a Federal Express coat and carrying the parcel and a pad of delivery invoices, rang the doorbell for the first floor apartment and knocked on the front door. The Plaintiff opened the door. In response to Caruso's questions, the Plaintiff verified the address, told him that his name was Michael Spencer, and that he lived on the second floor. When Caruso told him that the delivery was for a "Sylvia Sloan," the Plaintiff repeated the name to himself, and then told Caruso that he would accept the parcel. The Plaintiff signed the delivery invoice, took possession of the parcel, went inside and closed the front door. As Caruso walked away, the Plaintiff came back outside, without the parcel, and looked up and down the street.

At this point, four of the other Defendants, Eugene Dohmann ("Dohmann"), Larry Eisenstein ("Eisenstein"), Douglas Robinson ("Robinson"), and Wayne Scutari ("Scutari"), approached the residence and encountered the Plaintiff in the front doorway. They identified themselves as police officers and brought the Plaintiff into the first floor common hallway, where they observed that the Federal Express parcel had been placed on a shelf. They then read the Plaintiff his *Miranda* [1] rights and placed him under arrest. The Plaintiff denied knowledge of the contents of the parcel or of anybody named Sylvia Sloan, and he claimed that he innocently had accepted the parcel.

From the bottom of a stairway of approximately twelve to fourteen steps leading up to the second floor, Dohmann, Eisenstein, Robinson, and Scutari could see that the door to the Plaintiff's apartment was ajar. Eisenstein asked the Plaintiff if anybody else was inside the apartment, and received no response. Eisenstein and Robinson subsequently ascended the stairs and entered the Plaintiff's apartment. In the Plaintiff's bedroom, they observed, in plain view on top of the Plaintiff's bed, a homemade "crack" pipe and a dinner plate containing crack cocaine residue, as well as a rolled up $1 bill containing crack cocaine.

The Plaintiff subsequently was charged with possession of one kilogram or more of

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

a cannabis-type substance with intent to sell in violation of Conn. Gen.Stat. § 21a–278(b), and possession of narcotics in violation of Conn. Gen.Stat. § 21a–279(a). At trial, the Plaintiff filed a motion to suppress the evidence of any crack cocaine seized from his apartment on the ground that the evidence had been obtained illegally as the result of an unconstitutional warrantless search. The trial court conducted a full evidentiary hearing on the motion to suppress, during which Dohmann, Eisenstein, Robinson and Scutari testified. After conducting this hearing, the trial court denied the Plaintiff's motion to suppress. The trial concluded, and the jury returned a verdict finding the Plaintiff not guilty of possession with intent to sell of one kilogram or more of a cannabis-type substance, and guilty of possession of narcotics.

The Plaintiff appealed his conviction. On April 27, 2004, the Connecticut Supreme Court reversed the Plaintiff's conviction with directions to the trial court to grant the motion to suppress. *Spencer,* 268 Conn. at 600, 848 A.2d 1183. The Plaintiff filed the instant suit on July 28, 2006.

## II. DISCUSSION

The Defendants now move for summary judgment, arguing that the Plaintiff's claims are barred for a number of reasons, including applicable statute of limitations, and that they are entitled to summary judgment as a matter of law. The Plaintiff refutes all of the Defendants' arguments. The court shall discuss the parties' arguments seriatim.

### A. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be granted, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56.

Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *Am. Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975)).

A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

### B. SEARCH AND SEIZURE STATUTE OF LIMITATIONS

The Plaintiff alleges the Defendants violated his right under the Fourth Amendment to the U.S. Constitution, and Article I, § 7 of the Constitution of the State of Connecticut to be free from unreasonable searches. The Fourth Amendment claim is brought pursuant to 42 U.S.C. § 1983. The Defendants argue that the unreasonable search claims are barred by the applicable statute of limitations.

Under Connecticut law, "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen.Stat. § 52–577. "Section 52–577 ... governs ... claims pursuant to the Connecticut Constitution and state common law." *In re State Police Litig.*, 888 F.Supp. 1235, 1249 (D.Conn.1995) (citing *Orticelli v. Powers*, 197 Conn. 9, 16, 495 A.2d 1023 (1985)). "In section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions'...." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir.2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)). "When a § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations." *Walker v. Jastremski*, 159 F.3d 117, 119 (2d Cir.1998); see *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir.1994) (applying Conn. Gen.Stat. § 52–577 to § 1983 actions). Thus, applicable limitations period for the federal and state unlawful search claims is three years.

The search of the Plaintiff's residence occurred on April 12, 2000. He filed this action nearly six years later, on July 28, 2006. Absent any deferred date of accrual, the Plaintiff's unreasonable search claims would clearly be time-barred. The Plaintiff argues, however, that the court should defer the accrual date. Specifically, the Plaintiff maintains that the statute of limitations for his claims began to run on April 27, 2004, when the Connecticut Supreme Court reversed his conviction.

The court finds that no deferred accrual date is permitted here, and that the statute of limitations on the Plaintiff's claims began to run on April 12, 2000. Although state law determines the limitations period for a § 1983 claim, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, —— U.S. ——, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007) (emphasis in original). "[I]t is the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action[,] .... that is, when the plaintiff can file suit and obtain relief...." *Id.* (internal citations and quotation marks omitted).

The Plaintiff's deferred accrual argument is not extensive. The court notes that in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the United States Supreme Court held that when a judgment in a plaintiff's favor in a civil action would necessarily imply the invalidity of his criminal conviction, the civil cause of action does not arise until his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by an authorized tribunal, or called into question by the issuance of a federal habeas corpus writ. *See id.* at 486–87, 114 S.Ct. 2364. Nevertheless, the Supreme Court pointed out that

a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, ... and especially harmless error, ... such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

*Id.* at 487 n. 7, 114 S.Ct. 2364 (internal citations omitted). In light of this language, *Heck* does not support the Plaintiff's position that the accrual date for his unreasonable search claims should be April 27, 2004, as such a § 1983 action, even if successful, would not necessarily

have implied that his conviction was unlawful.

More importantly, however, the Supreme Court in *Wallace* clarified the holding in *Heck,* noting that

> the *Heck* rule for deferred accrual is called into play only when there exists 'a conviction or sentence that has not been … invalidated,' that is to say, an 'outstanding criminal judgment.' It delays what would otherwise be the accrual date of a tort action until the setting aside of an *extant conviction* which success in that tort action would impugn."

*Wallace,* 127 S.Ct. at 1097–98 (emphasis in original). Similar to the situation in *Wallace,* there was no "outstanding criminal judgment" when the Plaintiff filed this lawsuit. His conviction had, in fact, been invalidated; thus, the *Heck* rule for deferred accrual was inapplicable.

▮▮▮ As noted above, accrual occurs when a plaintiff has a complete and present cause of action. For example, with regard to seizure claims,[2] a seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). "Once that act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies." *Fox v. Van Oosterum,* 176 F.3d 342, 351 (6th Cir.1999). Accordingly, so long as the plaintiff knows or has reason to know of the search, a claim for an illegal search accrues, and a plaintiff has a complete and present cause of action, when the act of searching the property is complete.

Here, the Plaintiff's search claim accrued, and the three-year statute of limitations began to run, on the date of the search in question, April 13, 2000. This case was filed nearly six years after that date. As a result, his Fourth Amendment unlawful search claims under the Fourth Amendment and the Connecticut Constitution are barred. Consequently, with regard to the federal and state unlawful search claims, the Defendants' motion for summary judgment **(dkt. # 47)** is **GRANTED.**

### C. MALICIOUS PROSECUTION/"PLANTING EVIDENCE"

With regard to the unlawful search claims, the court's holding should come as no surprise to the Plaintiff. In ruling on the motion to dismiss, Judge Hall expressly noted the following:

> Though the court addresses only two of the defendants' grounds for dismissing the Complaint, the court notes that Spencer's § 1983 claim may be completely barred by the three-year statute of limitations for filing such actions. *See Williams v. Walsh,* 558 F.2d 667, 670 (2d Cir.1977). Federal law determines the accrual date of a § 1983 action. *Wallace v. Kato,* —— U.S. ——, 127 S.Ct. 1091, 1095 [166 L.Ed.2d 973] (2007). Accrual generally occurs "when the plaintiff has a complete and present cause of action," *id.* (quotations and citations omitted), or, "when the plaintiff knows or has reason to know of the harm." *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1994). Spencer's complaint appears to challenge the legality of the search of his home on April 12, 2000. He filed this action nearly six years later, on July 28, 2006. Because it appears that Spencer's unreasonable

---

**2.** Although *Wallace* involved a false arrest claim specifically, courts have found it a "rather modest leap" to apply *Wallace*'s principles to other causes of action, including search and seizure claims. *See Mallard v. Potenza,* No. 94–CV–223 (CBA), 2007 WL 4198246, at *3 (E.D.N.Y. Nov. 21, 2007) (collecting cases).

search claim would not necessarily render his conviction invalid, *see Heck v. Humphrey*, 512 U.S. 477, 487 n. 7 [114 S.Ct. 2364, 129 L.Ed.2d 383] (1994), it also appears that Spencer's harm occurred "by the invasion of his zone of privacy." *Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir.1990). Spencer argues that the applicable statute of limitations did not begin to accrue until April 27, 2004, when the Connecticut Supreme Court ruled that the cocaine found in his apartment should have been suppressed.... However, this would only be true if Spencer alleged wrongdoing analogous to malicious prosecution. *See Wallace*, 127 S.Ct. at 1097 (discussing *Heck* rule of delayed accrual for malicious prosecution claims).

*Spencer*, 2007 WL 1186042, at *2 n. 1. That is, Judge Hall essentially put the Plaintiff on notice that his search and seizure claims were barred by the statute of limitations.

In response to Judge Hall's admonition, the Plaintiff, in his opposition brief, now attempts to classify his claims in new terms. The Plaintiff states that he is, in fact, claiming malicious prosecution, and that the police planted evidence. In the complaint, however, there is no mention of malicious prosecution, nor is there any indication of the Plaintiff's belief that the police planted evidence. Indeed, in his opposition brief, the Plaintiff states the following: "Mr. Spencer contends that his fourth amendment [sic] claims includes [sic] an allegation for malicious prosecution. That is, although the plaintiff did not list separately a claim for malicious prosecution, the facts of the case and the nature of the allegations implies [sic] a malicious prosecution allegation." (Dkt. # 50, p. 3.)

The court finds otherwise. The Plaintiff's assertions are wholly inadequate to support his position. Even under the relatively informal standard of notice pleading in federal court, whereby a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a), a complaint must nevertheless "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Erickson v. Pardus*, — U.S. —, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted). That is to say, when looking at a complaint, a defendant should not have to guess what the claims against him are, only to have the plaintiff assert (during summary judgment, no less) that the complaint alleges something else entirely. There is no "notice by implication" pleading standard in federal court.

Moreover, in her ruling on the motion to dismiss, Judge Hall all but ordered the Plaintiff, who was represented by an attorney,[3] to amend his complaint so that no ambiguities would exist. Judge Hall stated the following:

> The difficulty in resolving this matter is that Spencer's accrual argument and the ambiguity of his Complaint raise a doubt as to whether he actually intended to allege malicious prosecution, or if his Reply merely makes a legal error with respect to the accrual of his unreasonable search and/or seizure claim.... Regardless, Spencer is advised that it would behoove him to clarify the nature of his Fourth Amendment claim should he file an amended complaint.

*Spencer*, 2007 WL 1186042, at *2 n. 1. The Plaintiff did not do as Judge Hall advised.[4]

---

3. The Plaintiff initially proceeded *pro se* until his attorney entered an appearance on February 15, 2007, which was before Judge Hall issued her decision.

4. The Plaintiff did file an amendment to his complaint, but that amendment consisted of two paragraphs specifying only the address of the searched property and date of the search.

In addition, the parties' Rule 26(f) Report, which was filed on September 19, 2007, contains no mention of malicious prosecution or planting evidence. Thus, because the Plaintiff did not bring malicious prosecution or "planting evidence" claims in this case, the court shall not consider these allegations on summary judgment. *See McAllister v. New York City Police Dep't,* 49 F.Supp.2d 688, 697–98 (S.D.N.Y.1999) (collecting cases).

### D. FALSE ARREST

 The Plaintiff also raises the issue of false arrest. As with the malicious prosecution and "planting evidence" allegations, this false arrest claim was not raised in the complaint or the amendment to the complaint. For that reason alone such a claim would fail. The parties did, however, mention false arrest in the Rule 26(f) Report, and they have made false arrest arguments in their summary judgment briefs. Therefore, in the interest of fairness, the court shall analyze this claim.[5]

 First, the court sees no reason why the applicable statute of limitations would not bar this claim as it did for the unlawful search claims. Indeed, the background facts in *Wallace* are very similar to the facts of this case. *Wallace* specifically involved a false arrest claim arising from a situation where the plaintiff's conviction was overturned because the Appellate Court of Illinois held that officers had arrested petitioner without probable cause. *Wallace,* 127 S.Ct. at 1094. The plaintiff's criminal case was remanded for a new

trial, and the prosecutors dropped the charges. *Id.* Thereafter, the plaintiff filed his false arrest claim, which the Supreme Court found to be time-barred; in fact, the Supreme Court expressly held that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 1100. Thus, following this principle here, the court finds that the Plaintiff's false arrest claim is time-barred.[6]

Second, even if the false arrest claim were not time-barred, it would still fail. Connecticut law is unsettled as to whether a plaintiff, in order to prove a claim of false arrest, must show that the prosecution terminated in his favor. *See Weyant v. Okst,* 101 F.3d 845, 853 (2d Cir.1996). Although the Second Circuit in *Roesch v. Otarola,* 980 F.2d 850, 853–54 (2d Cir.1992) found that a favorable termination of the underlying proceedings was an element of a false arrest claim in Connecticut, this specific holding of the *Roesch* decision subsequently has been called into question, *see, e.g., Colon v. Ludemann,* 283 F.Supp.2d 747, 753–54 (D.Conn.2003), and has not been expressly adopted by the Connecticut Supreme Court. This ambiguity is not relevant here, though, as the Plaintiff was found not guilty on the marijuana charge and his conviction on the crack cocaine charge was overturned. Thus, even if there were a "favorable ter-

---

**5.** It is unclear whether this false arrest claim is brought solely under Connecticut law, solely under § 1983, or under both. Any such distinction is not material to this analysis, though, as "[c]laims for false arrest ... brought under [Section] 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest

... under state law." *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003).

**6.** The parties do not specify when the Plaintiff was detained pursuant to "legal process." The Plaintiff was convicted on December 5, 2001. The Plaintiff's detention pursuant legal process presumably would have occurred well before then, but even using that date, the Plaintiff's claims are time-barred.

mination" prerequisite for a false arrest claim, the Plaintiff has met that burden.

■ In Connecticut, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green v. Donroe*, 186 Conn. 265, 267, 440 A.2d 973 (1982). Under Connecticut law, the existence of probable cause is fatal to claims of false arrest. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir.2004). "[F]ederal and Connecticut law are identical in holding that probable cause to arrest exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir.2007) (internal quotation marks omitted). "[P]robable cause is a fluid concept ... not readily, or even usefully, reduced to a neat set of legal rules.... While probable cause requires more than a mere suspicion[ ] of wrongdoing, its focus is on 'probabilities,' not 'hard certainties[ ]'...." *Id.* (internal citations and quotation marks omitted). "In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (internal quotation marks omitted). In sum, probable cause "requires only such facts as make wrongdoing or the discovery of evidence thereof probable." *Id.* at 157.

■ Based upon the above law, it is not difficult for the court to conclude that the police had probable cause to arrest the Plaintiff. To begin with, the reversal of the Plaintiff's crack cocaine conviction is not dispositive here. That reversal was based upon the Connecticut Supreme Court's finding that the police lacked probable cause to *search* the Plaintiff's residence. This finding does not mean, however, that the police lacked probable cause to *arrest* the Plaintiff, an issue about which the Connecticut Supreme Court did not opine. Moreover, the court points out that the Plaintiff was arrested before the police searched his residence. Indeed, the arrest was initially based upon the Plaintiff's acceptance of the parcel of marijuana, not upon the finding of crack cocaine during the search of his residence. Thus, the legality of the Plaintiff's arrest does not depend on the legality of the search of the Plaintiff's residence.

■ The fact that the Plaintiff was ultimately found not guilty of the marijuana charge is not dispositive, either. "[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful." *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir.1989). Moreover, the failure of an arrest to lead to a conviction does not establish a lack of probable cause for that arrest because "[t]he quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction...." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983).

The relevant facts here are undisputed. During a "controlled delivery," the Plaintiff, in full view of the police, accepted, took possession of, and placed in his residence a parcel containing a significant amount of marijuana. This was sufficient to allow the police to believe that the Plaintiff had committed a crime, namely, that he had violated either § 21a–278(b) or § 21a–279 of the Connecticut General Statutes. Thus, in the court's view, the police had probable cause to arrest the Plaintiff, regardless of whether he was ultimately convicted with regard to the parcel of marijuana. No rational finder of fact could find otherwise. Consequently, with regard to the Plaintiff's false arrest claim, the

Defendants' motion for summary judgment (dkt. # 47) is **GRANTED.**[7]

### E. EMOTIONAL DISTRESS/PROPERTY DAMAGE

 In his complaint, the Plaintiff further alleges that the Defendants caused him emotional distress and that they damaged his residence, which are causes of action under Connecticut law. All of these claims are time-barred. The conduct of the Defendants that allegedly caused the emotional distress occurred six years before this case was filed. Intentional infliction of emotional distress claims are subject to a three-year limitations period. *See* Conn. Gen.Stat. § 52–577; *DeCorso v. Watchtower Bible and Tract Soc. of N.Y., Inc.,* 78 Conn.App. 865, 873, 829 A.2d 38 (2003). Negligent infliction of emotional distress claims are subject to a two-year limitations period. *See* Conn. Gen.Stat. § 52–584; *Rivera v. Double A Transp., Inc.,* 248 Conn. 21, 31, 727 A.2d 204 (1999). Regardless of whether the Plaintiff is attempting to allege intentional infliction of emotional distress, negligent infliction of emotional distress, or both, any such claim is time-barred.

 The same holds true for the Plaintiff's property damage claim, whether one calls it conversion or trespass. If the Plaintiff is alleging that the damage to his property was intentional, the limitations period is three years. *See* Conn. Gen.Stat. § 52–577. If the Plaintiff is alleging that the damage to his property was caused by negligence, the limitations period is two years from when the injury is first sustained or discovered. *See* Conn. Gen.Stat. § 52–584. In either case, his claims are time-barred. Consequently, with regard to the Plaintiff's emotional distress and property damage claims, the Defendants' motion for summary judgment (dkt. # 47) is **GRANTED.**

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment (**dkt. # 47**) is **GRANTED. Judgment shall enter in favor of the City of Stamford, the Stamford Police Department, Frederick Caruso, Eugene Dohmann, Larry Eisenstein, Douglas Robinson, and Wayne Scutari on all claims against them in the complaint.** As the court previously had dismissed all the claims against the State of Connecticut and Thomas Snyder, there are no longer any remaining claims in this case. Therefore, the clerk shall close this file.

**SO ORDERED.**

---

**7.** In light of the court's decision, no discussion of qualified immunity is required.